IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**WEAKLEY COUNTY BOARD OF EDUCATION,**

    Plaintiff,

v.                1:08-cv-01254-JDB-cgc

**H. M., Individually and by and through
J. M., natural parent and guardian of H. M.,**

    Defendants.

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**

  Before the Court is Plaintiff Weakley County Board of Education's Motion to Dismiss Defendants H.M. and J.M.'s Counterclaims. (D.E. #13). The instant motion was referred to United States Magistrate Judge Charmiane G. Claxton for a Report and Recommendation. (D.E. #23). For the reasons set forth herein, the Court RECOMMENDS that Plaintiff's Motion to Dismiss be GRANTED.

  **I. Introduction**

  This case arises from allegations that Weakley County Board of Education violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq.,* by denying H.M. a free and appropriate public education. Specifically, Defendants argue that Weakley County Board of Education failed to develop an Individualized Education Plan ("IEP") for H.M. and failed to inform J.M., the father of H.M., of his procedural rights as required by IDEA. Due to the alleged

1

failures, J.M. enrolled H.M in multiple private educational facilities and then initiated the instant challenge asserting a denial of her rights under federal law.

On June 26 and 27, 2007, a due process hearing was held before Judge William J. Reynolds, Administrative Law Judge for the Tennessee Department of Education, Division of Special Education. Judge Reynolds issued a Final Order on September 22, 2008, which set forth extensive findings of facts as to Weakley County Board of Education's treatment of H.M.

Specifically, the Department of Education found that H.M. entered Dresden High School in Weakley County as a freshman in Fall, 2003. Final Order at 4, ¶ 2. During her freshman year, H.M. "experienced difficulty" which resulted in her transfer to Weakley County's "Keep Hoping" program. Id. In Fall, 2004, H.M. began her sophomore year at Westview High School in Weakley County. Id. at 4, ¶ 3. Although she was periodically absent, her teachers "did not observe her as an emotionally disturbed student or otherwise a student in crisis." Id. However, after Fall Break in October, 2004, H.M. refused to return to school. Id. at 5, ¶ 4. Weakley County Board of Education received a "homebound application" from H.M.'s physicians recommending that she receive a temporary homebound education based upon her "'increased anxiety.'" Id.

Following this request on November 8, 2008, Weakley County Board of Education designated H.M. as "Health Impaired" and eligible for special education based upon her doctor's diagnosis of Post-Traumatic Stress Disorder and Major Depression. Id. at 6, ¶ 12. Weakley County Board of Education did not perform any independent evaluations or testing. Id.

On November 23, 2004, J.M. met with Weakley County Board of Education to request residential placement for H.M. Id. at 6, ¶ 13. At this time, J.M. was unaware that H.M. had been placed in special education at Westview High School. Id. Although the school apparently

considered this to be an IEP meeting, the purported IEP was developed without any evaluation, without any testing, and without developing behavioral goals that addressed her mental health needs. Id. at 7, ¶ 14. Thereafter, H.M. was provided homebound educational services by Weakley County Board of Education, but she made no educational progress and was "failing every class." Id. at 7, ¶ 15. As a result, her teacher recommended that the homebound educational services be discontinued. Id.

Not realizing that the Weakley County Board of Education had already deemed H.M. to be in need of special education services, J.M. requested that the school conduct an evaluation to determine if his daughter was eligible for special education placement. Id. at 8, ¶ 17. J.M. was not advised that the school had already determined that H.M. was qualified for special education services, but instead he was told to complete certain forms giving the school permission to test H.M. Id. at 8, ¶ 17-20. During this time, H.M. was not making any progress with the homebound services, and J.M. believed H.M. was at risk of either being deemed truant or failing her sophomore year of school. Id. at 8-9, ¶ 20. Accordingly, J.M. enrolled his daughter in Gateway Christian School. Id. J.M. remained "hopeful that the upcoming evaluation from [Weakley County Board of Education] would identify his daughter as special education and he would be able to obtain the help that H.M. needed." Id.

On February 11, 2005, Weakley County Board of Education conducted its evaluation and held an IEP meeting. Id. at 9, ¶ 21. Following the meeting, the school determined that H.M. did not satisfy the requisite criteria for special education as "Health Impaired" or "Emotionally Disturbed." Id. at 10, ¶ 24. The school found that "H.M.'s emotional difficulties appear[ed] to be situational, rather than consistent, in all aspects of her life." Id. at 10, ¶ 26. Based upon its evaluation, the

3

school recommended that H.M. continue her homebound education and consider enrolling in public school the following fall semester. Id. J.M. was not advised that he had the right to disagree with the denial of eligibility and ask for an independent evaluation. Id. at 10, ¶ 25. Additionally, J.M. was not notified that he needed to provide written notice if he desired to seek reimbursement for any residential placement or private education. Id. at 10-11, ¶ 27.

In March, 2005, H.M. ran away from home and was thereafter admitted to Three Springs Residential Treatment Center on March 11, 2005, where she remained until July, 2005. Id. at 11, ¶ 28. Subsequently, it was determined that H.M. presented a danger to herself and others, and she was transferred to Three Springs, New Beginnings. Id. at 12, ¶ 31. Following this designation, J.M. hired an educational consultant, Dr. Andrew Erkis, to help find an appropriate placement for H.M. Id. at 12, ¶ 32. Shortly thereafter, H.M. was transferred to High Frontier High School in Fort Davis, Texas. Id. at 12, ¶ 33. At High Frontier High School, they determined that she was eligible for special education services and developed an IEP for her education. Id. at 14, ¶ 35. H.M. "made slow but steady progress from her entrance at High Frontier on July 26, 2005, and until her graduation with honors from [High] Frontier High School on May 22, 2007." Id. at 14-15, ¶¶ 35-36. Upon graduation, H.M. was accepted to Murray State University and enrolled in Fall, 2007. Id.

Following the Administrative Law Judge's findings of fact, he concluded that Weakley County Board of Education denied H.M. a free and appropriate public education in violation of the IDEA. He ordered that the costs of tuition in the Three Springs facilities, the tuition at High Frontier High School, the travel expenses for student and parent to these out-of-state facilities, and the cost of educational consultant Dr. Andrew Erkis be reimbursed to J.M. The Administrative Law Judge further declared J.M. and H.M. jointly as the prevailing party on all issues.

On October 21, 2008, Weakley County Board of Education filed a Complaint in the United States District Court for the Western District of Tennessee to appeal the September 22, 2008 Final Order by the Administrative Law Judge of the Tennessee Department of Education. In response, Defendants filed an Answer and Counterclaim on November 6, 2008. In Counterclaim I, Defendants seek enforcement of the final order of the Administrative Law Judge. Def.'s Counterclaim ¶ 43. In Counterclaim II, Defendants request that the Court affirm the Final Order of the Administrative Law Judge. Def.'s Counterclaim ¶ 45. In Counterclaim III, Defendants assert that they are entitled to attorneys' fees and costs as prevailing party in the due process hearing. Def.'s Counterclaim ¶ 47.

On November 11, 2008, Weakley County Board of Education filed the instant Motion to Dismiss asserting that Defendants have failed to state a claim upon which relief may be granted. Specifically, Weakley County Board of Education argues as follows: (1) that Defendants are not entitled to reimbursement for already-incurred private school tuition and costs during the pendency of the appeal; (2) that there is no current educational placement to maintain during the pendency of the appeal; (3) that Defendants' claim for attorneys' fees is not ripe for adjudication because their status as prevailing party is subject to the determination of this appeal; and, (4) that Defendants' claim for affirmation of the administrative order is not a viable independent cause of action. Pl.'s Mot. to Dismiss at 1.

Defendants respond that the counterclaims are valid and should not be dismissed. As to Counterclaim I, Defendants state that they seek an injunction under 20 U.S.C. § 1415(j) to enforce the Administrative Law Judge's Final Order. Def.'s Resp. at 1-2. As to Counterclaim II, Defendants state that it "simply avers that the extensive facts outlined in the factual background

were supported by a preponderance of the evidence as required by 20 U.S.C. § 1415(i) and the Administrative Law Judge's decision should be given due weight and affirmed." Def.'s Resp. at 2. As to Counterclaim III, Defendants reiterate that they should be awarded attorneys' fees and costs as the prevailing party in this action. Def.'s Resp. at 2.

## II. Standard of Review

A counter-defendant may bring a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). This motion only tests whether the counter-plaintiff has pleaded a cognizable claim. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss, on the basis of a dispositive issue of law, meritless counterclaims which would otherwise waste judicial resources and result in unnecessary discovery. See, e.g., Nietzke v. Williams, 490 U.S. 319, 326-27 (1989).

To determine whether a motion to dismiss a counterclaim should be granted, the court must examine the counter-complaint. The counter-complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and it must provide the opposing party with "fair notice of what the [party's] claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). While a counter-complaint need not present detailed factual allegations, to be cognizable it must provide more than "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1959 (2007); see also Scheid, 859 F.2d at 436-37. A counter-complaint must have a factual foundation, and the mere possibility that the claimant "might later establish some set of undisclosed facts to support recovery" is insufficient to survive a 12(b)(6) challenge. Twombly, 127 S.Ct. at 1968 (internal

6

quotation marks and brackets omitted).

### III. Analysis

#### A. *Counterclaim I—Enforcement of the Final Order*

First, the Court must consider whether Defendants' Counterclaim I, which requests that the Court enforce the final order of the Administrative Law Judge, states a claim upon which relief may be granted. Weakley County Board of Education argues that the IDEA does not permit injunctive relief for tuition reimbursement during the pendency of the administrative and judicial proceedings. Instead, Weakley County Board of Education contends that the United States Supreme Court has held that parents who unilaterally place their child in a private school must bear these costs and that a court may only order reimbursement after the adjudication on the merits is complete. See Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993). In response, Defendants allege that the September 22, 2008 Order required Defendants to be reimbursed for the enumerated costs within thirty days. Defendants argue that Weakley County Board of Education has violated the Administrative Law Judge's Order by not timely reimbursing them. Def.'s Resp. in Opposition to Pl.'s Mot. to Dismiss at 4.

Section 1415(j) pertains to the "maintenance of current educational placement" and requires that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ." Id. This provision is often referred to as the "stay put" or "pendent placement" provision. See, e.g. Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 82 (3d Cir. 1996). As one court noted, this provision "represents Congress' policy choice that all

handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Id. at 83 (quoting Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864-65 (3d Cir. 1996)).

Upon consideration, the Court finds that 20 U.S.C. § 1415(j) does not pertain to reimbursement of tuition and costs, but instead pertains only to the educational placement of a child during the pendency of IDEA challenges. The Administrative Law Judge found that H.M. graduated from high school before the administrative hearing was held and that H.M. is now enrolled as a college student. Final Order at 15, ¶ 36. Thus, the Court finds that Defendants have failed to state a claim under 20 U.S.C. § 1415(j), as there are no factual allegations presented by Plaintiff or Defendants that the Weakley County Board of Education is currently required to maintain any "current educational placement" for H.M. Even if § 1415(j) permitted a form of injunctive relief of the nature sought by Defendants, Weakley County Board of Education correctly notes that reimbursement is not permissible until the final determination on the case on the merits. See Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993). Thus, the Court RECOMMENDS that Defendants' Counterclaim I be dismissed for failure to state a claim upon which relief may be GRANTED.

In so doing, the Court notes that Defendants will still be able to contest whether they are eligible for reimbursement for violations of the IDEA, as this is precisely the issue before the Court in the instant appeal. However, the Court finds that Defendants do not have a valid counterclaim under 20 U.S.C. § 1415(j) as a means for contesting the reimbursement issue.

### B. Counterclaim II—Affirm the Final Order

Next, the Court must determine whether Defendants' Counterclaim II, which requests that the Court affirm the Final Order of the Administrative Law Judge, states a claim upon which relief may be granted. Defendants state that the Administrative Law Judge found numerous violations of IDEA and issued a Final Order which meets all of the requirements of 20 U.S.C. § 1415(i). As such, Defendants state that the decision should be affirmed. Further, Defendants state that Weakley County School Board "attempts to argue that there cannot be a request that the [Administrative Law Judge's] decision be affirmed in an affirmative pleading." To this, Defendants respond, "Why not?" and further state that "[c]learly there are facts in the record which support the Administrative Law Judge's decision that there were numerous procedural violations by the school district and that the appropriate educational placement for the child was as requested by the parent." Def.'s Resp. at 5-6.

To determine whether Defendants may pursue this counterclaim, the Court must consider what a valid counterclaim requires. Generally, a "counterclaim is not directed at the allegations of the complaint but rather is an independent claim for relief." 27A Federal Practice Lawyer's Edition § 62:201. In Office and Professional Employees International Union, Local No. 9, AFL-CIO v. Allied Industrial Workers International Union, 297 F. Supp. 688 (E.D. Wisc. 1975), the United States District Court for the Eastern District of Wisconsin considered a similar issue where the counterclaim sought, *inter alia*, dismissal of the complaint and specific performance of the agreement at issue in the controversy. Id. at 690. In determining whether the counterclaim was proper, the court stated as follows:

> As a matter of legal theory, a counterclaim . . . is not directed at the allegations of the complaint but rather is an independent claim for relief. The federal courts are not, however, slaves to the archaic rules of common law pleading. The fact that the defendant's allegations—that the controversy was settled—are denominated a counterclaim rather than an affirmative defense is not fatal to their relevancy. Rule 8(c), Federal Rules of Civil Procedure, provides in part:

> If a party mistakenly designates a defense as a counterclaim, . . . the court must, if justice so requires, treat the pleading as though it were correctly designated . . . .

Id. at 691 (quoting Fed. R. Civ. P. 8(c)) (internal citations omitted).  Likewise, in John Evans Sons, Inc. v. Majik-Ironers, Inc., 95 F.R.D. 186 (E.D. Pa. 1982), the United States District Court for the Eastern District of Pennsylvania considered a case in which the counterclaim "merely serve[d] to restate the controversy set forth in the complaint." Id. at 190 (quoting 5 Moore's Federal Practice § 41.09).  As such, the court struck the counterclaim as redundant to the complaint.  Id.

This Court finds the reasoning of Office and Professional Employees International Union and John Evans Sons, Inc. to be persuasive and agrees that a counterclaim must contain an independent claim for relief to survive a motion to dismiss.  A request that the Administrative Law Judge's Final Order be affirmed cannot be said to contain an independent claim for relief, as it is instead a prayer that Plaintiff's appeal not be successful.  Although Defendants' certainly shall be afforded the opportunity to refute Plaintiff's claims on appeal, a self-styled "counterclaim" requesting the Administrative Law Judge's order be affirmed must fail as a matter of law. Accordingly, the Court RECOMMENDS that Defendants' Counterclaim II be dismissed as a matter of law and that the allegations in Counterclaim II be treated as a defense to Plaintiff's Complaint.

### C.  Counterclaim III—Entitlement to Attorneys' Fees and Costs

Finally, Defendants' Counterclaim III seeks a reasonable award of attorneys' fees and costs pursuant to 20 U.S.C. §1415(i)(3)(B).  Defendants contend that this is appropriate pursuant to 20 U.S.C. § 1415(i)(3)(B), which provides that a court may award reasonable attorneys' fees to a prevailing party who is the parent of a child with a disability.  Weakley County Board of Education responds that this claim is not ripe for adjudication because Defendants' status as prevailing party

is the subject of the instant appeal.

Upon review, the Court finds that this purported counterclaim must fail because it is directed at the allegations of the complaint rather than being an independent claim for relief. See 27A Federal Practice Lawyer's Edition § 62:201. Specifically, in the Court's determination of Weakley County Board of Education's appeal, the District Court will determine whether Defendants shall be deemed prevailing party. After so ruling, the District Court will determine whether attorneys' fees are appropriate to be awarded to any party. See 20 U.S.C. § 1415(i)(3)(B). Thus, the Court RECOMMENDS that Defendants' Counterclaim III be dismissed as a matter of law and that the allegations in Counterclaim III be treated as a defense to Plaintiff's Complaint.

### IV. Conclusion

For the reasons set forth herein, the Magistrate Judge respectfully RECOMMENDS that Plaintiff's Motion to Dismiss be GRANTED.

**IT IS SO ORDERED** this 30th day of August, 2009.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE